## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

PRISCILLA CHAVOUS *et. al.*

                 Plaintiff,

     v.                                5:25-CV-562
                                              (AMN/MJK)

M&T BANK *et. al.*,

                 Defendant.

---

Priscilla Chavous, *Pro Se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE ANNE M. NARDACCI, U.S. District Judge:

### ORDER and REPORT- RECOMMENDATION

Plaintiffs commenced this action on May 6, 2025, by filing a complaint (Dkt. 1). Plaintiffs also filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Dkts. 2, 3). The Clerk has sent Plaintiffs' complaint and *IFP* application to this Court for review. (Dkts. 1, 2, 3).

## I.    BACKGROUND

This case arises from Plaintiffs', Priscilla and Trevon Chavous, decision to buy a home. Plaintiffs met with M&T Branch Manager Defendant David Wilson, who told Plaintiffs "he could help" them "get approved" for a mortgage and "get into a home." (Complaint, Dkt. 1, at 7).

1

Soon after, Plaintiffs "entered into a mortgage contract with M&T bank and its loan originator Xioang Zheng." *Id.* (cleaned up). Originally, Plaintiffs' intended to purchase a two-unit home. *Id.* But Defendant Zheng told Plaintiffs that they "could not get a house that needed repairs," they "could not get a loan for repairs since it was their first house," and Plaintiffs had to take classes for the two-unit property. *Id.* (cleaned up). Because of these restrictions, Defendant Zhang showed Plaintiffs a one-unit property that was "abandoned for 15 years with no upgrades." *Id.* Plaintiffs refused this property. Yet—according to Plaintiffs—Defendant Zheng approved the one-unit property and took one of the Plaintiffs off the loan.[1]

Plaintiffs then filed a complaint with the Consumer Financial Protection Bureau ("CFPB") which "released" Plaintiff "from that contract."[2] *Id.* at 8. Months later, Plaintiffs engaged in further conversations with Defendant Zheng who told them that "they had to take the" one-unit property "because they couldn't get an increase on the loan."[3] *Id.* Plaintiffs refused again. Defendant Zheng then advised

---

[1] The Complaint says, "Zheng took me off the loan." (Complaint, Dkt. 1, at 7). The "me" which the complaint refers to is unknown to the Court. But from other language used in the complaint, the Court believes that the person removed was Priscilla Chavous. *See id* at 7 ("My son and I entered into a mortgage contract"); *see also id* at 8 ("I texted Zheng and asked her if it was because I was a woman").

[2] The Court is unsure which contract Plaintiff is referring to.

[3] The loan's amount is unclear form the Complaint. Plaintiffs note that they were approved for a $140,000 loan. (Complaint, Dkt. 1, at 8). But they were limited to purchasing a $95,000 home. *Id.* Given banking practices, it is unlikely that a Bank gave Plaintiffs a $140,000 loan for purposes of purchasing a home *and* doing repairs.

Plaintiffs that if they failed to make the purchase, they would lose the loan. *Id.* So Plaintiffs purchased the property. *Id.* At this time, there was neither an abstract nor Truth in Lending Disclosures. *Id.*

The house Plaintiffs purchased from Defendant Supreme Associates Int. had not been upgraded or repaired in 15 years, had only four rooms, "the real damages were covered," "had a terrible odor when" Plaintiffs turned the air off," water leaked from the walls in the basement and the kitchen sink, and rodents, woodchucks, and other pests "made nests throughout the house." *Id.* And because of the home's state of disrepair, Plaintiffs cannot live in it. *Id.* at 6.

As an aside, Plaintiffs also allege that Defendant Alexia Rodriguez did not respond to any of their emails or calls. *Id.* at 8. So they called Defendant Wilson, who called Defendant Rodriguez's boss "Eric" to prompt Defendant Rodriguez to respond to their communications. *Id.* Defendant Rodriguez's failure to respond "in a timely manner" only "slowed down the process." *Id.* When Plaintiffs finally spoke with Defendant Rodriguez and asked her about inspecting the house, she told them they did not need an inspection, since the Federal Housing Administration ("FHA") would do one. *Id.* Further, Defendant Rodriguez only looked for apartments where Plaintiffs did not want to live and made excuses to not move into other homes. *Id.*

3

Plaintiffs now bring this action against Defendants M&T Bank, Wilson, Zheng, Rodriguez, and Supreme Associates Int. In their complaint, Plaintiffs *possibly* allege that Defendant Zheng knew the home was defective but sold it under fall pretenses, and M&T Bank or Defendant Zheng failed to make Truth in Lending disclosures. Plaintiffs also possibly raise the issue of duress. *See id* at 7-9. The Court now reviews Plaintiffs complaint and *IFP* request.

## II.    <u>IFP APPLICATION</u>

Plaintiffs declares in their *IFP* applications that they are unable to pay the filing fee. (Dkt. 2, 3). After reviewing their applications, this Court finds that Plaintiffs are financially eligible for *IFP* status.

## III.    <u>STANDARD OF REVIEW</u>

In addition to determining whether a plaintiff meets the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statue requires a court to dismiss a case— at any time—if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV. <u>DISCUSSION</u>

Plaintiffs' complaint fails to state a claim. So the Court recommends dismissing Plaintiffs' claims against all defendants without prejudice and with leave to amend.

### A. Federal Rule of Civil Procedure 8

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense[,] and determine whether the doctrine of res judicata is

applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing *Bell Atl. Corp.*, 550 U.S. at 555).

As to Defendants Wilson, Rodriguez, and Supreme Associates Int., Plaintiffs do not assert, indicate, or come within shouting distance of a stating a legal claim. Plaintiffs' complaint as to Defendants Wilson, Rodriguez, and Supreme Associates Int. is an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*,

556 U.S. at 678. That is simply not enough to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (Adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against him or "how it was excessive.").

Regarding Defendant's M&T Bank and Zheng, Plaintiffs' complaint comes closer, but still misses the mark. While Plaintiffs say there is "no Truth in Lending Disclosures" that is not enough. The complaint neither indicates who failed to include the document nor do Plaintiffs say whether they were aware of the house's dilapidated condition. *See generally* (Complaint, Dkt. 1). In fact, Plaintiffs live in Syracuse, New York, so it would be odd if they decided to purchase a home without visiting it. *See* (Complaint, Dkt. 1, at 7-10). And while it is true that *pro se* complaints must be viewed in "a more lenient" light than "formal pleadings drafted by lawyers," that liberality has its limits. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Pro se* complaints must still show that plaintiffs are entitled to relief. *Buxbaum v. Bondi*, No. 25 CIV.3052 (KPF), 2025 WL 1294168 at *1 (S.D.N.Y. May 5, 2025).

Here, Plaintiffs fail to do so. And because they do, the Court recommends dismissing the entire complaint, without prejudice.[4] *See Aschcroft*, *supra*.

### B. Opportunity to Amend

Generally, before courts dismiss a *pro se* complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, there is no futility. Plaintiffs can add sufficient facts such that: (1) the complaint complies with rule 8, and (2) the Court can glean from the complaint that perhaps at least one of the named defendants harmed Plaintiffs. Thus, the Court recommends allowing Plaintiffs leave to amend. While an amended complaint may survive an initial review, the Court is not opining as to whether it would survive a properly filed dispositive motion.

If the District Court approves this recommendation and allows Plaintiffs to submit a proposed amended complaint, they should be warned that any amended complaint must be a *complete and separate pleading*. Plaintiffs must state all their

---

[4] Because duress is not a claim but rather an affirmative defense, the Court recommends dismissing it without prejudice with leave to amend when, and if, there is a responsive pleading and duress is applicable.

claims—*with detail*—in the amended pleading and may not incorporate by reference any part of their original complaint.

## V.    <u>CONCLUSION</u>

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiffs' motions to proceed *IFP* (Dkts. 2, 3) is **GRANTED**,[5] and it is further

**RECOMMENDED,** the complaint should be dismissed in its entirety, in accordance with Fed. R. Civ. P. 8, **WITHOUT PREJUDICE** and with leave to amend, and it is further

**ORDERED,** that while Plaintiff may file objections to this Order and Report-Recommendation, before Plaintiff submits any amended pleading, she should wait for the District Court to rule on the above Orders and Recommendations, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[6]

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

---

[5] The Court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

[6] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

**THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE**

**REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 19, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

2025 WL 1294168
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael BUXBAUM, Plaintiff,

v.

Pamela Jo BONDI, Defendant.

25 Civ. 3052 (KPF)

|

Signed May 5, 2025

**Attorneys and Law Firms**

Michael Buxbaum, Boca Raton, FL, Pro Se.

## ORDER OF DISMISSAL

KATHERINE POLK FAILLA, District Judge:

**\*1** Plaintiff Michael Buxbaum, who is appearing *pro se*, brings this action against Defendant Pamela Jo Bondi, alleging that he "was unlawfully injected with a virus from a United States Federal Agent upon the order of Defendant ... on approximately March 20, 2025." (Dkt. #1 at 6). Plaintiff has not requested to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees, and indeed has paid the filing fee in this case. (*See* May 1, 2025 Docket Entry). The Court dismisses the complaint for the reasons set forth below.

## DISCUSSION

### I. Plaintiff's Claims Are Frivolous

The Court must dismiss an IFP complaint, or any portion of such a complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). As relevant here, "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee." *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000). In either instance, Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *Triestman*, 470 F.3d at 475 (citation omitted), has its limits — to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief, *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

"[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A complaint is " 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless' — that is, if they are 'fanciful,' 'fantastic,' or 'delusional.' " *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton*, 504 U.S. at 32-33) (finding as frivolous and baseless allegations that set forth a fantastical alternative history of the September 11, 2001 terrorist attacks); *see also Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989) (A claim is frivolous when it "lacks an arguable basis either in law or in fact."); *Livingston*, 141 F.3d at 437("[A]n action is 'frivolous' when either: [i] the factual contentions are clearly baseless ... or [ii] the claim is based on an indisputably meritless

legal theory." (internal quotation marks and citation omitted)). Moreover, a court has "no obligation to entertain pure speculation and conjecture." *Gallop*, 642 F.3d at 368.

Plaintiff's complaint is premised upon his belief that he "was unlawfully injected with a virus from a United States Federal Agent upon the order of Defendant ... on approximately March 20, 2025." (Dkt. #1 at 6). He further believes that individuals Adam Daniel Sommer and Cari Joy Sommer "are funding a socialist spend to pay Defendant ... to pay law enforcement, social workers, and media broadcasting to follow [him] against [his] wishes and ... activate [his] Federally injected virus." (*Id.*). He claims that, because of the unlawful injection, he has "been prevented from working in the free global cryptocurrency capital markets." (*Id.*).

**\*2**  However, a "[p]laintiff's beliefs — however strongly he may hold them — are not facts." *Morren* v. *New York Univ.*, No. 20 Civ. 10802 (JPO) (OTW), 2022 WL 1666918, at *18 (S.D.N.Y. Apr. 29, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 1665013 (S.D.N.Y. May 25, 2022). Plaintiff provides no factual basis for his assertions that he was injected with a virus, followed by law enforcement and others at the behest of Defendant Bondi, and excluded from cryptocurrency capital markets as a result. *See Lefkowitz* v. *John Wiley & Sons, Inc.*, No. 13 Civ. 6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (complaint must set forth facts showing basis for information and belief). Plaintiff's allegations amount to conclusory claims and suspicions that are not plausible and must be dismissed as frivolous. *See Kraft* v. *City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order) (holding that "the district court did not err in *sua sponte* dismissing the complaint as frivolous," based on the plaintiff's allegations that he had "been the subject of 24-hour, multi-jurisdictional surveillance by federal 'fusion centers' and the New York State Intelligence Center, which put a 'digital marker' on him in order to collect his personal data and harass him").

### II. Leave to Amend Is Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill* v. *Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin*, 861 F.2d at 42. Plaintiff's complaint does not suggest that he is in possession of facts that would cure the identified deficiencies. *See Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Fischman* v. *Mitsubishi Chem. Holdings Am., Inc.*, No. 18 Civ. 8188, 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend and dismisses the action as frivolous.

SO ORDERED.

### All Citations

Slip Copy, 2025 WL 1294168

---

2024 WL 4870495

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1**  Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

## B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **4**  Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

## C. Discussion [6]

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority'; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

 *7  In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

 *8  It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

### Footnotes

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4        Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5        Plaintiff did not provide any transcripts.

6        As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7        The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8        Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9        Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10       The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11       If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

End of Document                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Distinguished by Johnson v. Gonzalez, N.D.N.Y., March 13, 2015

289 F.Supp.2d 289

United States District Court, N.D. New York.

Isaac GOVAN, Plaintiff,

v.

James CAMPBELL, Albany County Sheriff; Edward Szostak; Michael Frese, Albany County
Correctional Officer; and Co Rudolph, Albany County Correctional Officer, Defendants.

No. CV.9:98–CV–00710 GLS

|

Oct. 29, 2003.

**Synopsis**

Inmate filed pro se action against county sheriff, jail superintendent, and two county correctional officers pursuant to § 1983, alleging that defendants violated his civil rights under the Eighth and Fourteenth Amendments by failing to provide him access to grievance process, interfering with his mail, subjecting him to inhuman prison conditions, assaulting him, and denying him medical treatment. Upon the defendants' motion for summary judgment, the District Court, Gary L. Sharpe, United States Magistrate Judge, held that: (1) alleged conditions of prison facility did not rise to level of constitutional violation or cause inmate harm, as required to support Eighth Amendment claim that conditions of confinement were cruel and unusual; (2) inmate failed to show that he was denied the right to file grievances, as required to support claim that he was denied First Amendment right to petition government for redress; (3) inmate failed to show prejudice by officials' alleged interference with his mail, as required to support claim that officials' interference with his legal mail violated his civil rights; and (4) inmate's claims that prison officials violated Eighth Amendment prohibition against cruel and unusual punishment through verbal abuse, denial of medical attention after he was struck in leg with basketball, and officer's act of slamming him against wall and rubbing against him were insufficient to support constitutional or civil rights violation.

Motion granted.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (28)

**[1]**    **Summary Judgment**    👉 **Pro se litigants**

In a pro se case in which a party has moved for summary judgment, the court must view the pro se party's submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

448 Cases that cite this headnote

**[2]**    **Summary Judgment**    👉 **Pro se litigants**

Liberal standard applicable to pro se litigants does not excuse a pro se litigant from following the procedural formalities of summary judgment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

358 Cases that cite this headnote

**[3]**    **Summary Judgment**  👉  Form and requisites

      **Summary Judgment**  👉  Pro se litigants

      **Summary Judgment**  👉  Determination

Nothing in rule of civil procedure governing summary judgment imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute in a case involving a pro se litigant; as long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

135 Cases that cite this headnote

**[4]**    **Summary Judgment**  👉  Statement of facts

In ruling on motion for summary judgment filed by correctional facility officers, jail superintendent, and county sheriff in civil rights action filed by pro se inmate who alleged that officers violated his civil rights pursuant to § 1983, district court would accept properly supported facts contained in officers' statement as true for purposes of granting motion for summary judgment; inmate did not file statement of undisputed material facts in compliance with local rule. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

67 Cases that cite this headnote

**[5]**    **Sentencing and Punishment**  👉  Conditions of Confinement

In order to prevail on a claim that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, an inmate must satisfy both an objective element and a subjective element. U.S.C.A. Const.Amend. 8.

6 Cases that cite this headnote

**[6]**    **Sentencing and Punishment**  👉  Conditions of Confinement

To satisfy the objective element of a claim that the conditions of confinement constituted cruel and unusual punishment under the Eighth Amendment, an inmate must demonstrate that the conditions of his confinement resulted in unquestioned and serious deprivations of basic human needs or deprived him of the minimal civilized measure of life's necessities. U.S.C.A. Const.Amend. 8.

9 Cases that cite this headnote

**[7]**    **Sentencing and Punishment**  👉  Conditions of Confinement

The subjective element of a claim that the conditions of confinement constitute cruel and unusual punishment under the Eighth Amendment requires an inmate to show that the prison official acted with a sufficiently culpable state of mind regarding the deprivation of basic human needs or minimal civilized measure of life's necessities. U.S.C.A. Const.Amend. 8.

3 Cases that cite this headnote

**[8]**    **Sentencing and Punishment**  👉  Deliberate indifference in general

In cases involving prison conditions in which an inmate claims that conditions of confinement constituted cruel and unusual punishment under the Eighth Amendment, the subjective element of prison officials' state of mind is one of deliberate indifference. U.S.C.A. Const.Amend. 8.

2 Cases that cite this headnote

**[9]**    **Sentencing and Punishment**  🔑   Conditions of Confinement

For purposes of assessment of claim that conditions of an inmate's confinement were cruel and unusual under the Eighth Amendment, conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses. U.S.C.A. Const.Amend. 8.

3 Cases that cite this headnote

**[10]**    **Sentencing and Punishment**  🔑   Hazardous and unhealthful conditions

        **Sentencing and Punishment**  🔑   Sanitation

Inmate failed to allege unconstitutional prison conditions, as required to support claim that conditions of confinement were cruel and unusual under the Eighth Amendment; conditions of which inmate complained, consisting of unclean shower stalls with rust bubbles, cockroaches that could have crawled into his orifices or clothing while he slept, wild birds that were alleged to fly freely through facility, and unsafe condition created by on-duty officer's inability to see directly into his cell at all times, did not rise to constitutional violation, and inmate did not assert how he was actually harmed by conditions. U.S.C.A. Const.Amend. 8.

10 Cases that cite this headnote

**[11]**    **Constitutional Law**  🔑   Prisoners

Prisoners retain the constitutional right to petition the government for the redress of grievances. U.S.C.A. Const.Amend. 1.

3 Cases that cite this headnote

**[12]**    **Civil Rights**  🔑   Prisons and jails; probation and parole

Inmate failed to make specific allegation that a particular grievance was disregarded or destroyed by prison officials, as required to support § 1983 claim alleging that his civil rights were violated by the denial of his First Amendment right to petition government for redress of grievances; officials provided 14 different grievances filed by inmate over 10-month period over matters such as denial of phone access to have his wife charged and arrested, missed meals when he went to court, and contesting a ticket for fainting, officer stated that inmate was encouraged to write grievances so he would remain quiet, and officials showed that most of inmate's grievances went through entire appellate process. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

**[13]**    **Constitutional Law**  🔑   Prisoners and pretrial detainees

        **Prisons**  🔑   Communication with courts, officers, or counsel

A prisoner must be present when, for whatever reason, legal mail clearly marked as such is opened by prison officials, and the Constitution guarantees a prisoner reasonable access to the courts.

1 Case that cites this headnote

[14]    **Prisons** 🔑 Communication with courts, officers, or counsel

In order to prevail on a claim of prison officials' interference with legal mail, a prisoner must show that a pending or anticipated legal action was prejudiced by the alleged interference.

5 Cases that cite this headnote

[15]    **Civil Rights** 🔑 Access to courts

**Civil Rights** 🔑 Prisons

Correctional facility inmate's claim that officials twice interfered with his mail and were responsible for the destruction of paperwork he left behind did not state cognizable claim under § 1983 for interference with his mail; interruption of mail was not a facility problem, inmate failed to show that pending or anticipated legal action was prejudiced by officials' alleged interference with mail, and inmate admitted leaving his documents behind in cell and failed to name specific person whom he believed destroyed his property. 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

[16]    **Prisons** 🔑 Health and Medical Care

As a general rule, a state has a constitutional obligation to provide inmates adequate medical care.

[17]    **Sentencing and Punishment** 🔑 Cruelty and unnecessary infliction of pain

The Eighth Amendment's prohibition of cruel and unusual punishment also prohibits the unnecessary and wanton infliction of pain on prison inmates. U.S.C.A. Const.Amend. 8.

[18]    **Sentencing and Punishment** 🔑 Scope of Prohibition

A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components, one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. U.S.C.A. Const.Amend. 8.

1 Case that cites this headnote

[19]    **Sentencing and Punishment** 🔑 Wantonness

The subjective component of a claim of cruel and unusual punishment under the Eighth Amendment requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness, in light of the particular circumstances surrounding the challenged conduct. U.S.C.A. Const.Amend. 8.

[20]    **Sentencing and Punishment** 🔑 Use of force

In an excessive force case brought by an inmate alleging that he or she was subjected to cruel and unusual punishment under the Eighth Amendment, whether prison officials' conduct was wanton under the subjective component turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. U.S.C.A. Const.Amend. 8.

1 Case that cites this headnote

**[21]    Sentencing and Punishment** 🗝️ Scope of Prohibition

The objective component of an Eighth Amendment cruel and unusual punishment claim focuses on the harm done, but the amount of harm that must be shown depends on the nature of the claim; objective component is contextual and responsive to contemporary standards of decency. U.S.C.A. Const.Amend. 8.

**[22]    Sentencing and Punishment** 🗝️ Use of force

A showing of extreme injury is not required by an inmate when the claim is that prison officials violated Eighth Amendment's prohibition of cruel and unusual punishment through use of excessive force; in excessive force context, society's expectations are different from other cruel and unusual punishment claims. U.S.C.A. Const.Amend. 8.

**[23]    Sentencing and Punishment** 🗝️ Use of force

When prison officials maliciously and sadistically use force to cause harm to an inmate, contemporary standards of decency always are violated under Eighth Amendment's prohibition against cruel and unusual punishment; this is true whether or not significant injury is evident. U.S.C.A. Const.Amend. 8.

1 Case that cites this headnote

**[24]    Sentencing and Punishment** 🗝️ Use of force

Key inquiry in inmate's claim that prison officials used excessive force in violation of Eighth Amendment's prohibition against cruel and unusual punishment is whether the alleged conduct involved unnecessary and wanton infliction of pain. U.S.C.A. Const.Amend. 8.

**[25]    Sentencing and Punishment** 🗝️ Use of force

An inmate's allegation indicating a de minimis use of force by prison officials will rarely suffice to state a constitutional claim of use of excessive force under Eighth Amendment's prohibition against cruel and unusual punishment. U.S.C.A. Const.Amend. 8.

**[26]    Sentencing and Punishment** 🗝️ Scope of Prohibition
**    Sentencing and Punishment** 🗝️ Use of force

Eighth Amendment's prohibition against cruel and unusual punishment does not extend to de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind; however, when a prisoner alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, this states an Eighth Amendment claim on which he is entitled to present evidence. U.S.C.A. Const.Amend. 8.

1 Case that cites this headnote

**[27]    Sentencing and Punishment** 🗝️ Other particular conditions

A claim brought by a prison inmate under § 1983 is not designed to rectify prison officials' harassment or verbal abuse under Eighth Amendment's prohibition against cruel and unusual punishment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

1 Case that cites this headnote

[28]    **Prisons**    Use of force

**Prisons**    Threats, intimidation, and harassment;  abusive language

**Prisons**    Particular Conditions and Treatments

**Sentencing and Punishment**    Medical care and treatment

**Sentencing and Punishment**    Use of force

**Sentencing and Punishment**    Other particular conditions

Prison inmate's claims that prison officials violated Eighth Amendment prohibition against cruel and unusual punishment, through verbal abuse, denial of medical attention after he was struck in leg with basketball, and officer's act of slamming him against wall and rubbing against him, were insufficient to support constitutional or civil rights violation; inmate's medical records showed that he was examined half an hour after basketball incident occurred and was determined to have full range of motion with no swelling or bruising, inmate's verbal abuse claims were not cognizable under § 1983 and were insufficient to show viable constitutional violation, and officer's alleged use of force against inmate was de minimis and insufficient to violate Constitution. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

## Attorneys and Law Firms

**\*293**  Isaac Govan, Ogdensburg, NY, Pro se.

Roche, Corrigan Law Firm (Robert P. Roche, Esq., Of Counsel), Albany, NY, for Defendants.

### *DECISION AND ORDER* [1]

SHARPE, United States Magistrate Judge.

### I. *Introduction*

Plaintiff, *pro se* Isaac Govan filed an action under 42 U.S.C. § 1983 claiming that the defendants violated his civil rights. The defendants filed a motion for summary judgment. After reviewing Govan's claims, this court grants the defendants' motion for summary judgment because Govan's complaint fails to state a claim for which relief can be granted.

### II. *Background*

The original complaint was filed more than five years ago, but Govan amended that complaint on October 12, 2001. On May 12, 2003, the defendants filed a motion for summary judgment, and Govan subsequently responded. Govan contends that the defendants violated his civil rights under the Eighth and Fourteenth Amendments. Essentially, he claims that the defendants failed to provide him access to the grievance process, interfered with his mail, subjected him to inhuman prison conditions, assaulted him and denied him medical treatment.

The defendants maintain that Govan has never specified what injury the prison conditions, assault and denial of medical treatment caused him. They further maintain that the prison conditions did not violate Govan's rights, and that they were not responsible for the interruption of his mail. This court addresses each of these claims *seriatim*.

*294  **III.** *Facts* [2]

**A.** *Assault*

Govan alleges that while he was incarcerated at the Albany County Correctional Facility ("Albany"), he suffered physical and verbal abuse by Correctional Officers Rudolph and Frese. Specifically, he claims that Frese was sleeping while supervising recreation in the gym. During that time, Govan suffered a leg injury when he was struck with a basketball. Thereafter, he requested medical attention but was refused by Frese and Rudolph. Govan also claims that Frese used racial slurs, and pushed him against a wall. When Frese pushed him against the wall, he rubbed against Govan, and Govan argues that the rubbing constituted an unnatural sex act. Govan maintains that Rudolph spit on him, cursed at him, used vulgar language toward him and threatened him with physical violence. Govan claims that Rudolph used other inmates to intimidate him into dropping charges he had against him.

**B.** *Prison Conditions*

Govan complains of leaking pipes, rust on the walls, rust bubbles in the shower stall, and a splotchy brown substance on the walls and ceiling. He alleges that Szostak, the Albany County Jail Superintendent, poorly maintained the facility. Govan complains that there were cockroach problems, and that birds were permitted to enter through the windows of the facility. Govan also claims that he may have been exposed to the HIV virus, and Hepatitis B and C, through a dentist who worked for the facility who was using unsafe procedures. [3]

**C.** *Denial of Grievances*

Govan maintains that he was denied access to the grievance and appeals process by Szostak. Specifically, he maintains that Szostak failed to mail his appeal, thereby denying him his right to appeal. Govan also maintains that Campbell, as Sheriff, did not respond to his complaint regarding his mail problem. Finally, Govan claims that Campbell failed to forward his legal mail to Rensselaer County after he was transferred in the Fall of 1998. Govan claims that his file was left behind at Albany where it was destroyed by unknown persons.

**IV.** *Discussion*

**A.** *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). "When a motion for  *295  summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his ... pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e) ], must set forth specific facts showing that there is a genuine issue for trial." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994)(alternation in original) (citation omitted). However, it is well settled that on a motion for summary

judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999).

[1]    Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)(a court is to read a *pro se* party's "supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest"). Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990); *see LaFond v. General Physics Serv. Corp.,* 50 F.3d 165, 171 (2d Cir.1995).

[2]    This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond,* 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). More specifically, Local Rule 7.1(a)(3) of this court specifically provides that "any facts set forth in the [moving party's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Local Rule 7.1(a)(3) further requires that the "non-movant shall file a Statement of Material Fact which mirrors the movant's statement in matching numbered paragraphs and which set forth a specific reference to the record where the material fact is alleged to arise." The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *Giguere v. Racicot,* 00–CV–1178, 2002 WL 368534, at *2 (N.D.N.Y. March 1, 2002)(*inter alia* citing *Bundy Am. Corp. v. K–Z Rental Leasing, Inc.,* 00–CV–260, 2001 WL 237218, at *1 (N.D.N.Y. March 9, 2001)).

[3]    Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty America v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002). As long as the local rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis. *Id.* at 470–71.

[4]    In this case, Govan did not file a statement of undisputed material facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the **\*296** properly supported facts contained in the defendants' 7.1 statement (*Dkt. No. 134* ) as true for purposes of this motion. [4] With this standard in mind, the court now turns to the sufficiency of Govan's claims.

### B. *Prison Conditions*

[5]    [6]    Govan alleges that Szostak failed to provide a clean and healthy living environment in violation of his Eighth Amendment. In order to prevail on a claim that the conditions of confinement constitute cruel and unusual punishment, a plaintiff must satisfy both an objective element and a subjective element. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To satisfy the objective element, a "plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." *Anderson v. Coughlin,* 757 F.2d 33, 34–35 (2d Cir.1985) (citing *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

[7]    [8]    [9]    The subjective element requires a plaintiff to show that the prison official acted with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In cases involving prison conditions, the state of mind is one of "deliberate indifference." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (quoting *Wilson,* 501 U.S. at 302–03, 111 S.Ct. 2321). Conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses. *See Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392.

 **[10]**   In this case, Govan complains that the shower stalls were unclean and had rust bubbles. He also complains that the tier was infested with cockroaches which could have crawled into his orifices while he slept, or inside his clothing and shoes. He further claims that the sink and hot water in his cell did not work. Govan also claims that "wild birds" were permitted to fly freely through the facility. Finally, Govan contends that his safety was in danger since the officer on duty could not see directly into his cell at all times.

The defendants maintain that Govan has failed to state a claim for which relief can be granted. They maintain that the prison conditions in question were not serious enough to trigger a violation of Govan's constitutional rights. Moreover, the defendants point out that Govan has failed to show that they intended to cause him harm by subjecting him to the alleged prison conditions. Campbell's affidavit informs the court that hot water was provided in the shower area and thus, hot water was purposely turned off in every cell. *Campbell Aff. at ¶ 6.* Moreover, the defendants argue that the fact that Govan could have caught a "cold" or an "infection" is insufficient to show a violation of the constitution. The defendants further maintain that even if the prison conditions were unpleasant, they did not violate the constitution.

Govan has failed to assert unconstitutional prison conditions. As mentioned, conditions that are restrictive and harsh are an element of the penalty that criminal offenders pay to society for their offenses. Govan asserts conditions which "could have" caused him harm but he fails to assert how he was actually harmed. It may well be that the shower stalls had rust bubbles, that wild birds were permitted to  **\*297**  fly within the cells, and that there were cockroach problems, but these conditions do not rise to the level of a constitutional violation. Accordingly, Govan's Eighth Amendment prison condition claim is dismissed.

### C. *Grievance*

 **[11]**    **[12]**   Govan claims that he was prevented from filing grievances. Prisoners retain the constitutional right to petition the government for the redress of grievances. *Overton v. Bazzetta,* 539 U.S. 126, ——, 123 S.Ct. 2162, 2171, 156 L.Ed.2d 162 (2003)(citing *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). Govan claims that inmates are instructed to fill out a grievance complaint on a sheet of paper and hand it to the corrections officer who then will read the complaint and supposedly rewrites the complaint on a grievance form. Govan claims that if the complaint was against an officer's friend, the grievance would be destroyed.

The defendants maintain that the record belies Govan's allegation that he was not permitted to file grievances. The defendants have provided fourteen different grievances filed by Govan from February 21, 1998, to November 5, 1998. Some of the issues for which Govan filed a complaint included denial of phone access to have his wife charged and arrested, missed meals when he went to court, and contesting a ticket for fainting. Furthermore, the defendants argue that the official paperwork does not account for the unofficial request to Tier Sergeants, Captains and/or handwritten memos to the administration requesting that he be contacted in his cell throughout his intermittent ten month stay. Moreover, Campbell's affidavit informs the court that the allegation that he permitted corrections officers to rip up grievance forms was untrue. In fact, Campbell states that Govan was encouraged to write grievances so he would remain quiet. *Campbell Aff. at ¶ 4.*

The court notes that Govan makes no specific allegation that a particular grievance was somehow disregarded or ripped up. He claims that Albany had a policy to deny inmate grievances. As previously mentioned, conclusory allegations are insufficient to show that a constitutional violation occurred. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Furthermore, most of Govan's grievances went through the entire appellate process. Many of the grievances went to the Citizen's Review Board. This court finds that Govan was not precluded from filing grievances. Since Govan fails to state a specific claim for which relief can be granted, summary judgement in favor of the defendants is warranted.

### D. *Legal Mail*

 **[13]**    **[14]**   Govan contends that the defendants interfered with his legal mail. "It is accepted that a prisoner must be present when, for whatever reason, legal mail (clearly marked as such) is opened by prison officials ... and th[e] Constitution guarantees a prisoner[ ] 'reasonable access to the courts.' " *Standley v. Lyder,* 99 Civ 4711, 2001 WL 225035, at \*2 (S.D.N.Y. March 6,

2001)(internal citation omitted) (citing *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986)) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). In order "[t]o prevail on a claim of interference with legal mail, a plaintiff must show that a pending or anticipated legal action was prejudiced by the alleged interference." *Standley,* 2001 WL 225035, at *2 (quoting *Morgan v. Montanye,* 516 F.2d 1367, 1372 (2d Cir.1975) and *Herrera v. Scully,* 815 F.Supp. 713, 725 (S.D.N.Y.1993)). The Second Circuit has clearly held that an isolated incidence **\*298** of interference with a prisoner's mail does not give rise to a cognizable claim under § 1983. *Id.* 2001 WL 225035 at *2 (citation omitted).

 **[15]**   In this case, Govan alleges that the defendants twice interfered with his mail. Govan also claims that the defendants are responsible for the destruction of paperwork he left behind. The defendants maintain that the interruption of mail was not a facility problem. According to the defendants, Govan was informed that this issue was to be resolved with the United States Post Office. The defendants also maintain that Govan failed to show how the destruction of his paperwork caused an injury. Furthermore, they maintain that he abandoned his property.

This court finds that Govan's legal mail assertion fails to state a claim for which relief can be granted and dismissal is appropriate. He has failed to show that a pending or anticipated legal action was prejudiced by the alleged interference by the defendants. He further fails to name the defendants who allegedly destroyed his property. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citation omitted). As such, it is insufficient to allege that supervisory officials, Campbell and Szostak, are responsible for the unwarranted destruction of Govan's property.

Regardless of Govan's contention that the effort and stress including the cost to replace the items that the defendants allegedly destroyed will be great, this is insufficient to show a constitutional violation. As previously mentioned, an isolated incidence of interference with a prisoner's mail does not give rise to a cognizable claim under § 1983. Govan fails to even suggest that the interruption and/or the destruction of his property caused a legal action to be hindered. In addition, he admits leaving his documents behind in his cell and fails to name the specific person whom he believes destroyed his property. Accordingly, this court finds that Govan's legal mail claim is without merit and dismissal is appropriate.

 **E. *Assault and Denial of Medical Claim***

**[16]**   **[17]**   **[18]**   **[19]**   **[20]**   **[21]**   Govan claims that the defendants denied him medical attention and subsequently assaulted him. As a general rule, a state has a constitutional obligation to provide inmates adequate medical care. *See West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Furthermore, the Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Eighth Amendment also prohibits the "unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components, one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect. *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) (citing *Hudson v. McMillian,* 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' " in light of the particular circumstances surrounding the challenged conduct. *Blyden v. Mancusi,* 186 F.3d at 262 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298–299, 111 S.Ct. 2321, 115 L.Ed.2d 271). In an excessive force case, whether conduct was "wanton" turns on "whether force was applied **\*299** in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. 995; *see also, Blyden v. Mancusi,* 186 F.3d at 262–63. The objective component of a cruel and unusual punishment claim focuses on the harm done, but the amount of harm that must be shown depends on the nature of the claim. *See Hudson,* 503 U.S. at 8, 112 S.Ct. 995. This objective component is "contextual and responsive to contemporary standards of decency." *Id.* (internal quotation marks omitted).

 **[22]**   **[23]**   **[24]**   **[25]**   However, a showing of extreme injury is not required when the claim is that prison officials used excessive force. In the excessive force context, society's expectations are different. *Sims,* 230 F.3d at 21. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... [t]his is true

whether or not significant injury is evident." *Id.* at 21 (citation omitted). Thus, "[t]he key inquiry under *Hudson* and its precedents is whether the alleged conduct involved 'unnecessary and wanton infliction of pain.' " *Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994)(quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. 995). The Second Circuit has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims,* 230 F.3d at 22. Moreover, an allegation indicating "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Id.* (citations omitted).

 [26]    [27]    Simply put, the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 10, 112 S.Ct. 995 (internal quotation marks omitted). However, when a prisoner alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, this states an Eighth Amendment claim on which he is entitled to present evidence. Nevertheless, a claim brought under "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) (citation omitted).

 [28]    In this case, Govan's Eighth Amendment claims are threefold. First, Govan claims that he was verbally abused by the defendants. Second, Govan claims that the defendants denied him medical attention after he was struck in the leg with a basketball. Third, he claims that Frese slammed him against the wall and rubbed up against him.

The defendants point out that Govan failed to date most of his allegations against the defendants. However, Govan's filed grievances clarify what occurred and when. On March 26, 1998, Govan wrote a grievance where he alleged that Frese and Rudolph verbally assaulted him. *Defs.['] Ex. 2A & B.* On April 24, 1998, Govan filed another grievance against Frese and Rudolph alleging that they physically assaulted him and denied him medical attention. The defendants provide Govan's medical progress notes from April 24, 1998. The medical record shows that Govan was seen at 4:00 p.m., half an hour after he states that the basketball incident occurred. *Defs.['] Ex. 3C.* The record shows that at 5:35 p.m., Govan had full-range of motion, and no swelling or bruising was noted. On April 28, 1998, Sgt. O'Hara's investigation report indicated that on April 24, 1998, at 9:30 p.m., Govan requested that he be allowed to withdraw the grievance that he filed against Frese. *Defs.['] Ex. 3E.*

 **\*300**  All of Govan's claims involving a violation of his Eighth Amendment are dismissed. His claim involving verbal abuse is without merit. As noted, a claim under 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse. As such, Govan's claims against the defendants for verbal harassment fails to state a claim for which relief can be granted. It may well be that the defendants used language which was unprofessional and unpleasant. This alone is insufficient to show a viable constitutional violation.

Moreover, the record contradicts Govan's allegations about the defendants denying him medical treatment. The record is clear that Govan was, in fact, provided with prompt medical attention. Despite complaints of right shoulder pain, the record shows that he had a full-range of motion. Furthermore, he was not bruised or swollen. Accordingly, Govan's allegation that he was denied medical treatment is without merit, therefore summary judgment is appropriate in favor of the defendants.

Lastly, the Second Circuit has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Sims,* 230 F.3d at 22. Even if this court presumed that Frese pushed him against the wall and rubbed against him, this "*de minimis* " use of force is insufficient to state a constitutional violation. [5] Accordingly, this court finds that summary judgment for the defendants is warranted.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that the defendants' motion for summary judgment be **GRANTED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties by regular mail.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**All Citations**

289 F.Supp.2d 289

---

## Footnotes

1    This case is currently before this court on consent.

2    With some necessary additions, the facts are taken from the previously issued Order (*Dkt. No. 87* ).

3    This court previously dismissed Dr. Weinstien, the dentist, from this action. Even if Govan is attempting to accuse the remaining defendants of failing to supervise the dentist, this allegation is conclusory and unsupported by the evidence and must fail. *See e.g., Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning).

4    The court notes that this does not apply to the various conclusions of law contained in the defendants' 7.1 statement of material facts.

5    In addition, Govan claims that on the same date and during the same incident, Frese made unwanted sexual advances against him. This contention does not appear on the grievance he filed on that date. The defendants contend that they were unaware of this allegation prior to Govan filing suit. Regardless, this allegation is nothing more than a conclusory allegation and must fall. *See e.g., Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott LESSON, Plaintiff,

v.

Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)
|
Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

## I. INTRODUCTION

**\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

## II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself

that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

**\*2**  "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; [2] and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [3]

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1291533

---

### Footnotes

1    Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2    As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

3    The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.